EDWARD H. AMMIDOWN & another *vs.* CHARLES W. FREELAND & others.

The clause of the U. S. St. of 1864, *c.* 173, § 97, which empowers persons who, before its enactment, had made contracts without other provision therein for the payment of duties subsequently imposed by law on articles to be delivered under them, to recover from the purchaser of the articles a sum equivalent to the duties, if the same had not been previously paid by him, is constitutional and valid, as applied to such articles delivered after its passage.

The fact that for some weeks before the enactment of the U. S. St. of 1864, *c.* 173, § 97, the bill, including that section, was pending in congress and published in the newspapers, has no tendency to show that a person who, while it was pending, made a contract to deliver, at a time after the enactment, articles on which the statute imposed an additional duty, at a stipulated price and without other provision for the payment of the duty, cannot hold the purchaser of the articles liable for the amount of the duty, in accordance with that section; neither is his omission to add the amount of the duty to each invoice of the goods, as delivered, evidence of a waiver of his right to recover such amount under the statute, if he made formal claim for it on the purchaser before a final adjustment of their accounts under the contract; nor is the omission of such purchaser, with his knowledge, to secure reimbursement of such amount in or under contracts with other parties for a further sale of the articles, evidence of such a waiver.

In the absence of any provision by congress to the contrary, a suit may be maintained in a state court on the U. S. St. of 1864, *c.* 173, § 97, to recover the amount of duties imposed by that statute on articles delivered after, under contracts made before, its enactment.

CONTRACT on the U. S. St. of 1864, *c.* 173, § 97, to recover the amount of additional duties imposed by § 94 upon woollen goods, consisting of ninety thousand yards of army cloth and upwards of thirty-four thousand army blankets, which the plaintiffs, by written contracts, made with the defendants June 25, 1864, sold to the defendants to be delivered in equal lots monthly during six months beginning August 1, 1864, at the prices of two dollars and five cents per yard for the cloth, and four dollars and forty cents per blanket. The case was submitted to the decision of the court on a statement of facts agreed, which set forth those contracts and the delivery, in conformity therewith, of the cloth and the blankets in respect to which the amount of the duties was sought to be recovered, and was otherwise substantially as follows:

The cloth was part of a large quantity of such cloth, manufactured and delivered to the plaintiffs, by manufacturers in Pennsylvania, under a contract with the plaintiffs, made June 16,

1864, wherein they agreed to weave cloth from wool to be supplied by the plaintiffs, and to deliver the product of their manufacture to the plaintiffs in equal lots weekly from August 1, 1864, to January 1, 1865. The blankets were part of a number manufactured and delivered to the plaintiffs, by a manufacturer in New York, under a similar contract, made June 23, 1864. The manufacturers paid to the United States the additional duty imposed on the cloth by the statute, and took from the collector of internal revenue certificates of their payments; demanded repayment of the same to themselves from the plaintiffs, with which demand the plaintiffs never complied ; and sued the plaintiffs for the amount, which suit was still pending. The additional duty imposed on the blankets was paid to the United States by the manufacturer, on behalf of the plaintiffs, who refunded to him the amount of his payments.

" The plaintiffs, from time to time, as goods were delivered under their contracts, rendered bills to the defendants wherein the goods were charged at the prices stipulated in the contracts, without adding thereto the amount of the additional duty ; the defendants made payments from time to time, on account of the goods so delivered ; and the plaintiffs made no claim that they were entitled to any additional sum by reason of said increased duty, until after the passage of the act of congress and the delivery of the goods. On June 24, 1865, upon receipt of a partial payment by the plaintiffs, they addressed to the defendants a letter, which was duly received by the defendants," the material part of which was as follows : " In order that you may not forget the matter, or lose opportunity for collecting of the government, we inclose copies of the collector's certificates of the amount of extra tax paid on the infantry cloths delivered you under the old contract of June 25, and which is payable by you. We charged you the amount in account. There is also a similar claim for tax on the blankets ; but we have not yet received the collector's certificates." " Thereafter, payments were made, from time to time, by the defendants, and a correspondence was carried on between the parties as to their mutua claims, wherein the plaintiffs claimed the amount of the extra

tax. On or about April 12, 1866, a settlement was made by correspondence, in which the goods were paid for by the defendants at the stipulated prices, leaving the claim for the amount of the extra tax for future adjustment.

" The defendants, before such claims had been made upon them by the plaintiffs, had contracted to furnish clothing to the United States, to be manufactured from the cloth, with other materials, and had manufactured and delivered such clothing; had sold and delivered the blankets to the United States, and rendered bills therefor, without adding to the price thereof the amount of the additional duty, and without any stipulation in regard to the payment or reimbursement thereof; and the United States never reimbursed the same, and denied any obligation to do so. The plaintiffs knew, at the time they entered into the written contracts with the defendants, that the goods contracted for were intended to be sold by the defendants to the United States; and delivered a portion of them to the agents of the United States. The contracts between the defendants and the United States were dated after the passage of the act imposing an additional duty, which was one of the grounds of defence set up by the United States against liability to reimburse said duty; but all the details of the contracts were fully and precisely agreed upon before the passage of the act." " The bill on which the act of congress was based was reported to the house of representatives from the committee of ways and means, and ordered to be printed, April 14, 1864; contained in its original draft the provision imposing upon woollen manufactures an additional duty; was daily under consideration, section by section, from April 19 to April 28, when it passed the house; the debates on it were printed each week in the Congressional Globe; and § 97, under the provisions of which this suit was brought, was offered and adopted April 27. The bill was thereafter pending in the senate until June 30, when it became a law: and, during the time the bill was pending, the country was in a state of war and it was well known that the necessities of the government were very urgent."

*W. G. Russell,* for the plaintiffs

*D. Foster & G. W. Baldwin,* for the defendants. The legislation against which the defendants invoke protection of the court is unconstitutional. It is not the imposition of a tax under the clause of the Constitution granting to congress power " to lay and collect taxes," but is a power of reprisal granted to one individual against another, a confiscation of private property, not for the public use, but for the benefit of individual citizens. It is not a legislative, but a judicial act; and it decides, on an assumed state of facts and without a hearing, rights of property between individuals, adjudges the existence of a debt which did not previously exist and which is its own creation, and decrees its payment. *Hampshire* v. *Franklin,* 16 Mass. 84. *Medford* v. *Learned,* Ib. 216. *Tyson* v. *School Directors,* 51 Penn. State, 9 It is retrospective in its operation, and impairs to an unwarrantable extent the obligation of existing contracts. Although congress may, in the necessary exercise of positive powers given by the Constitution, pass laws the effect of which must be in part to impair the obligation of contracts, because the evil is necessarily attendant upon the beneficial exercise of its legitimate authority, which would otherwise fail of effect, yet congress may not pass an act like this, the only object and only effect of which is to impair the obligation of contracts. Kent, C. J., in *Dash* v. *Van Kleek,* 7 Johns. 477. The burden imposed by this act may operate with great inequality, and conflicts with the provision of the Constitution which requires that " all duties, imposts and excises shall be uniform throughout the United States." The difference of a day in the delivery of goods may impose, accidentally and arbitrarily, upon one of two individuals the burden of the tax, while the other, who bought at the same time and for the same price, wholly escapes. The remedy given by the act is impracticable. It must either lead to endless litigation, or the burden of the tax must finally fall upon some individual who does not care, or cannot afford, to pursue litigation further The manufacturer, the commission merchant, the jobber, the country trader and the tailor, are all liable in separate suits for their proportionate part of the tax assessed on goods which may have successively passed through their hands under contracts

entered into before the passage of the act. And there still remains a right of action against the customers of the tailor. No law, of doubtful constitutionality, should be countenanced, the literal enforcement of which leads to such extensive and vexatious litigation. Another objection is, that it gives no right to the purchaser to rescind the sale, or diminish the amount of his purchase, on account of the increased price. He is completely in the power of the vendor. The law creates a forced sale to an unwilling purchaser, at a price which it may be ruinous for him to pay. The tax must have been levied, collected and paid into the federal treasury, before the right of action arises. That payment is compulsory; and, after it has been made, the act undertakes to adjust the supposed natural equities between parties who have made contracts respecting the property on which it has been paid, or to give the taxpayer, by way of indemnity, a right of action against another. To do this is not to lay and collect a tax; nor is such a law either necessary or proper for carrying into execution the power of taxation. See Bigelow, C. J., in *Freeland* v. *Hastings*, 10 Allen, 575. Precedents of English legislation, such as the St. 23 & 24 Vict. *c.* 129, § 6, cannot aid in the consideration of the constitutionality of an act of congress, parliament not being restrained by any limited grant of powers. And our theory of taxation differs from that of England. Both recognize the people as the source of all power; but in England taxes are granted by parliament, not as agents for the people, but as the collective people, "the commons of the United Kingdom of Great Britain and Ireland, in parliament assembled," whereas the members of congress act as agents for the people, and are bound by the ordinary rules of agency. It is not their own money which they give; and they have no right to assume that the individual citizens for whom they act, and whose servants they are, will waive their natural rights and make improvident concessions to the government.

2. But if the law is constitutional, the plaintiffs have waived their right to avail themselves of its provisions. The circumstances under which the contracts were made tend to show that the parties had in contemplation the increase of duty, and that

it was considered in the price. They bear date of June 25, and the law took effect June 30; but the bill had been under discussion, day by day, in congress, for nearly three months. It proposed largely to increase the duties upon almost every article of manufacture; would naturally attract the attention of every business man whose interests would be directly affected by it; and the section imposing an additional duty on woollen fabrics was ordered to be printed as early as April 14. Can it be believed that the parties to the contracts were ignorant of this proposed increase of duty, and careless enough to assume, as the basis of an undertaking of such magnitude, that the duties would remain unchanged during the seven months allowed for the delivery of the goods? The country was in a state of war; the necessities of the government were urgent and increasing; and every intelligent man who bought or sold goods for future delivery must have considered the risk of an increase of duty. Further, the plaintiffs knew that all of the goods contracted for by the defendants were intended to be sold to the United States; and they delivered, themselves, a considerable portion of the goods to the agents of the government. They were bound, if they claimed the benefit of the law and intended to collect the tax, to give the defendants early notice of their intention so to do, in order that the defendants, in their turn, might arrange with the government for its reimbursement. They were bound, by the terms of the law, "to add to the price thereof so much money as will be equivalent to the duty so subsequently imposed," in order to lay a foundation for a suit. This they failed to do; they rendered bills from time to time, as the goods were delivered, wherein the goods were charged at the agreed prices without adding the increased duty; and it was not until all of the goods had been delivered, and had passed out of the hands of the defendants under contract with the government, that the plaintiffs gave intimation that they intended to avail themselves of this law.

3. If the law has any validity, it can be enforced only in the courts of the United States. Congress has no power to impose jurisdiction on state courts. 1 Kent Com. (6th ed.) 396, 400,

403.  *Martin* v. *Hunter,* 1 Wheat. 304.  *Houston* v. *Moore,* 5 Wheat. 27.  *Ward* v. *Jenkins,* 10 Met. 583.  *Carpenter* v. *Snelling,* 97 Mass. 458.  Whether it would be competent for a state court to exercise such a jurisdiction when conferred is doubtful. Treated as a matter of discretion, its voluntary exercise would be inexpedient.  This court should treat an action founded on this statute as the courts of Great Britain would, and as it treats statutory obligations of many other kinds, as, for instance, attempts to enforce penal liabilities under the acts of sister states.

GRAY, J.  The congress of the United States, in exercising the power, conferred by the Constitution, " to lay and collect taxes, duties, imposts and excises, to pay the debts and provide for the common defence and general welfare of the United States," and to make all necessary and proper laws for carrying this power into execution, may tax goods to be manufactured and sold, at any stage of their manufacture or sale, and may determine whether the tax upon goods sold shall be borne and paid by the seller or the buyer.  The parties may by agreement decide as between themselves which shall bear the tax; but no agreement of parties, whether made before or after the passage of a tax act, can exempt property from taxation according to the laws in force when the property reaches that stage at which it is declared by those laws to be taxable.  It is within the province of the legislature to determine not only which party shall pay the amount of the tax to the government, but upon whom the burden shall finally rest, and also, for greater certainty and convenience in the collection of the tax, to provide that the amount of the tax shall be paid by one party to the government and recovered by him from the other party or deducted upon a final settlement with him.

Examples of such legislation are to be found in the provisions inserted in the tax acts of Massachusetts from an early period, taxing real estate either to the landlord or the tenant, and giving to the one who actually pays the amount of the tax the right to recover the same or a certain portion thereof from the other; and in that section of the internal revenue act of the United

States, (the validity of which has been judicially established, requiring certain corporations to pay a duty on their bonds, and authorizing them to deduct the amount thereof in accounting with their bondholders, and thus making the corporations the agents of the government for enforcing and collecting the duty. *Derumple* v. *Clark,* Quincy, 38 and notes.   Rev. Sts. *c.* 7, §§ 7, 8.   Gen. Sts. *c.* 11, §§ 8, 9.   U. S. St. 1864, *c.* 173, § 122 ; 13 U. S. Sts. at Large, 284.   *Haight* v. *Railroad Co.* 6 Wallace, 15.   *Clopton* v. *Philadelphia & Reading Railroad Co.* 54 Penn. State, 356.

The English St. of 43 Geo. III. *c.* 81, which imposed an additional duty on spirits distilled on and after the 5th of July 1803, contained a section, reciting that contracts for the sale or delivery of articles or commodities thus subjected to additional duties might have been made, having no reference to such additional duties ; and enacting that all persons who had made any such contracts should be authorized and empowered " to add so much money as will be equivalent to the said additional duties respectively to the price of such articles or commodities."   By a contract made six weeks before the passage of the act, a distiller agreed to supply a merchant with a certain quantity of spirits, to be shipped at Leith, at a certain price per gallon, payable in three months from the time of shipment, and also agreed to be on the look out for a vessel, but the custom was for the purchaser to send a vessel to take the spirits on board.   No vessel could be found at Leith until after the passage of the act. It was held by the house of lords, under the advice of Lords Eldon and Redesdale, that the seller was entitled to charge the purchaser with the additional duty, making the price one third higher than that which had been agreed.   *Haig* v. *Napier,* 1 Dow, 255.   That case goes farther than is necessary to maintain this action.

By the internal revenue act of 1864, *c.* 173, § 94, an *ad valorem* duty is imposed on all cloth or textile fabrics of wool, cotton or other materials; and by § 97 it is provided that " every person, firm or corporation, who shall have made any contract prior to the passage of this act, and without other provision therein for

the payment of duties, imposed by law enacted subsequent thereto, upon articles to be delivered under such contract, is hereby authorized and empowered to add to the price thereof so much money as will be equivalent to the duty so subsequently imposed on said articles, and not previously paid by the vendee, and shall be entitled by virtue hereof to be paid, and to sue for and recover the same accordingly." 13 U. S. Sts. at Large, 269, 273.

The duty, the amount of which the plaintiffs seek to recover in this case, is upon woollen goods, and has been paid to the government by the manufacturer of the goods, as required by the internal revenue act. The plaintiffs have themselves paid the amount of the duty on part of these goods, and appear on the facts agreed, and are not denied by the defendants, to be liable to pay it on the other part, to the manufacturer. The goods on which it was payable and paid have since been delivered by the plaintiffs and received by the defendants under a contract of sale made between them before the passage of the act, and in the same shape in which the goods were when the duty was imposed and paid.

The effect of the act of congress, as applied to these facts, is, that a duty shall be imposed and paid on all goods of this description, manufactured and sold after the passage of the act imposing the tax; that the time of fixing the ultimate liability of bearing the burden of the tax so paid shall be on the delivery which completes the sale and passes the property; that the person upon whom that burden shall rest shall be the buyer; that, for the convenience and security of the government, the amount of the duty shall be collected in the first instance from the manufacturer; and that, after it has once been so collected, the amount thereof may be recovered by him, and by any subsequent seller, from the person to whom each sells and delivers the same goods. The tax is made to fall uniformly upon the buyer in all cases: and the act imposing it applies only to sales consummated by delivery after its passage, and therefore is not open to the objection of being retrospective in its operation.

The duty having been imposed under the act and paid by tne manufacturer and never paid by the defendants, and the goods

having been delivered by the plaintiffs to the defendants and received by them since the passage of the act, under a contract of sale previously made between the parties, the plaintiffs have the right, by the terms of the act, to recover the amount thereof from the defendants as their immediate vendees, without regard to the question whether the plaintiffs have or have not paid it themselves.

The contract between the parties containing no other provision for the payment of the duties, the fact that, for some weeks before that contract was made, the bill, including the ninety-seventh section, was pending in congress, and published in the newspapers, has no tendency to show that the defendants should not be held liable to the plaintiffs for the amount of the duty, in accordance with that section.

There is no ground for inferring a waiver of the plaintiffs' claim. As soon as the act was passed, the defendants were bound to know that they were liable to the plaintiffs for the amount of these duties. If they omitted to secure reimbursement in or under their contracts with other parties, it is their own fault; and neither their omission to do so, nor the plaintiffs' knowledge of those contracts, can affect the liability of the defendants to the plaintiffs. The plaintiffs were not required to add the amount of the tax to each invoice of goods as delivered; and they did make a formal claim upon the defendants for the amount of the duty before a final payment and settling of the accounts between the parties.

The claim of the plaintiffs is not for a penalty, but in the nature of a debt, growing out of the dealings between the parties, and the provisions of the act of congress. *Dawson* v. *Linton*, 5 B. & Ald. 521. *Foster* v. *Ley*, 2 Bing. N. C. 269. *Central Bridge Co.* v. *Abbott*, 4 Cush. 474. Met. Con. 5, 8. Congress not having prescribed in what courts the remedy therefor should be pursued, it may be sued for and recovered in any court, state or national, of appropriate jurisdiction. *Lapham* v. *Almy*, 13 Allen, 301. *Crocker* v. *Marine National Bank*, *ante*, 240, and authorities cited. *Stevens* v. *Mechanics' Savings Bank*, *ante*, 109.

*Judgment for the plaintiffs.*