# LAKE SUPERIOR CONSOLIDATED IRON MINES ET. AL v. LORD ET AL.

## BURROWS ET AL. v. LORD ET AL.

## ROYAL MINERAL ASSOCIATION ET AL. v. LORD ET AL.

## BOEING ET AL. v. LORD ET AL.

## WHITESIDE ET AL. v. LORD ET AL.

## MERRIMAC MINING COMPANY v. LORD ET AL.

## BARDWELL ET AL. v. SARGENT LAND CO. ET AL.

APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA.

Nos. 336, 355, 388, 389, 390, 391, and 471.   Argued December 8, 9, 1925.—Decided June 7, 1926.

1. The obligation of an outstanding contract is not impaired, contrary to Const. Art. I, § 10, by a later state statute taxing the proceeds of the contract.  P. 581.
2. Minnesota Laws of 1923, c. 226, directing levy and collection of a tax of 6 per cent. on royalties received for permission to explore, mine, take out and remove ore from land in the State, may be reasonably interpreted as laying a tax upon interests in mineral lands from which permission has been given to extract ores upon payment of royalty, the amount of the exaction being determined by reference to the sum actually received for the use of such interests, *Von Baumbach* v. *Sargent Land Co.*, 242 U. S. 305, and does not violate the requirement of the state constitution that " taxes shall be uniform upon the same class of subjects and shall be levied and collected for public purposes," or the due process clause of the Fourteenth Amendment.  P. 581.
3. As the tax is laid upon land, neither the owner's residence nor the place fixed for payment of the royalty is important.  P. 582.
4. Ore lands being a distinct class of property, the tax is consistent with the equal protection clause of the Fourteenth Amendment, without being extended to other classes, such as quarries and forests.  P. 582.

9542°—26——37

5. The state Legislature may exercise wide discretion in selecting the
subjects of taxation so long as it refrains from clear and hostile
discrimination against particular persons or classes.  P. 582.

Affirmed.

APPEALS from decrees of the District Court dismissing
the bills in suits against the Tax Commission of the State
of Minnesota to enjoin them from enforcing a tax on
royalties from ore lands.

*Messrs. George W. Morgan, Nathan L. Miller, Kenneth
B. Halstead, Frank D. Adams,* and *Elmer F. Blu.* for the
appellants in No. 336, submitted.

*Mr. Charles E. Hughes,* with whom *Messrs. John W.
Beaumont, George W. Weadock, Martin J. Cavanaugh,*
and *Archibald Broomfield* were on the brief, for appellants
in No. 355.

*Mr. W. D. Bailey,* with whom *Messrs. J. L. Washburn,
Oscar Mitchell,* and *J. W. Hunt* were on the briefs, for
appellants in Nos. 388, 389, 390, and 391.

*Messrs. John R. Van Derlip* and *John G. Milburn,* with
whom *Messrs. Fred B. Snyder* and *Edward C. Gale* were
on the brief, for appellants in No. 471.

*Mr. Patrick J. Ryan,* with whom *Messrs. Clifford L.
Hilton* and *G. A. Youngquist* were on the brief, for ap-
pellees.

MR. JUSTICE McREYNOLDS delivered the opinion of the
Court.

By their several bills in the United States District
Court, appellants alleged the invalidity of Chapter 226,
Laws of Minnesota, approved April 11, 1923, because of
conflict with the Fourteenth Amendment and the State
Constitution.  They sought to prevent its enforcement.
That court held the enactment valid and, by decrees en-

tered January 15, 1925, dismissed the bills.    These appeals followed.

The challenged Act (fourteen sections), effective from its passage, provides—

"Sec. 1. There shall be levied and collected upon all royalty received during the year ending December 31, 1923, and upon all royalty received during each calendar year thereafter, for permission to explore, mine, take out and remove ore from land in this State, a tax of six (6) per cent.

"Sec. 2. For all purposes of this Act the word 'royalty' shall be construed to mean the amount in money or value of property received by any person having any right, title or interest in or to any tract of land in this state for permission to explore, mine, take out and remove ore therefrom; and the word 'person' shall be construed to include individuals, co-partnerships, associations, companies and corporations."

Succeeding sections relate to reports to the Tax Commission, method of assessment, penalties, date of payment, etc.   Section 5 provides: "A person subletting land for the use of which he received royalty shall be required to pay taxes only on the difference between the amount of royalty paid by him and the amount received."   And Section 8: "The situs of royalty for all purposes of this act shall be in this state; and the tax herein provided for shall be a specific lien from the time the same is due and payable upon all and singular the right, title and interest of the person to whom such royalty is payable, in and to the land for permission to explore, mine, take out and remove ore on which the royalty is paid."

Article IX, Section 1, Constitution of Minnesota: "The power of taxation shall never be surrendered, suspended or contracted away.   Taxes shall be uniform upon the same class of subjects, and shall be levied and collected for public purposes . . ."

Extensive areas in northeastern Minnesota contain beds
of rich iron ore and derive their chief value therefrom.
Titles to these lands are held by many resident and non-
resident individuals and corporations. For many years
these owners have followed the common practice of mak-
ing long-term leases (ordinarily fifty years) to parties
who agree to mine the ore and pay the lessor, or his suc-
cessors, at some designated place, a specified amount
($.125 to $1.25), or royalty, for each ton removed. Some
lessees have made subleases, reserving to themselves some-
thing above what they are obligated to pay.

Great bodies of ore are now subject to such leases, or
conveyances of similar import, and every year millions of
tons are mined thereunder, most of which goes out of the
State. The consequent royalties are very large—sixteen
million dollars during 1923.

In 1921, the Minnesota Legislature adopted the Occu-
pation Tax Act—Chapter 223. It prescribes a charge
upon those who engage in mining, amounting to six per
centum of the value of the ore extracted and removed,
after deducting costs of operation and royalties. *Oliver
Iron Mining Co. et al. v. Lord*, 262 U. S. 172, sustained
this Act. The Legislature evidently intended that Chap-
ter 226, Laws of 1923, should supplement Chapter 223,
Laws of 1921, and thus secure payment to the State of
six per centum upon the value of all extracted ores, less
the expense of raising them. If the owner operates, he
must pay this six per centum, under the Occupation Tax
Act; if a lessee mines, the Act requires him to pay the
same amount, less royalty. The Act of 1923 lays a charge
of six per centum upon the royalty. See *State v. Armson*,
207 N. W. 727, 731.

Appellants—corporate and individual—receive royal-
ties from iron mines, under lease or similar contracts, at
designated places, sometimes within and sometimes with-
out the State. Some of them reside within the State, and

some without.  Some own the fee; some are lessees who have executed subleases.  They maintain that the tax prescribed by Chapter 226 of 1923 is not laid uniformly upon the same class of subjects, as required by the State Constitution; that its enforcement would deprive them of the equal protection of the laws and of property without due process of law, contrary to the Fourteenth Amendment; and that it impairs the obligation of their contracts and thereby violates Article I, Section 10, federal Constitution.

Titles to all the lands and leases were obtained subject to the State's power to tax.  If the statute now in controversy is within that power, it cannot impair the obligation of appellants' contracts; if beyond, it is, of course, invalid.  Accordingly, there is no occasion further to discuss the application of Article I, Section 10.

The only provision of the Minnesota Constitution which undertakes to limit the power of taxation, is in Article IX, Section 1.  " Taxes shall be uniform upon the same class of subjects, and shall be levied and collected for public purposes."  The state courts have said nothing to the contrary, and it seems to us sufficiently plain that this provision goes no further than the Fourteenth Amendment.  Consequently, if the legislation under review does not offend that Amendment there is no conflict with the State Constitution.

In *Von Baumbach* v. *Sargent Land Co.,* 242 U. S. 503, we considered mining leases like those now before us and pointed out that under the Minnesota decisions their avails are regarded as rents and profits of the land, " the compensation which the occupier pays the landlord for the species of occupation which the contract between them allows."  Ultimate construction of Chapter 226 is for the state courts, but, in the absence of that, we think the enactment may be reasonably interpreted as laying a tax upon interests in mineral lands from which permission

has been given to extract ores upon payment of royalty. The amount of the exaction is determined by reference to the sum actually received for the use of such interests.

As the tax is laid upon land, neither the owner's residence nor the place fixed for payment of the royalty is important.

The remaining question is whether the Legislature may treat ore lands as a distinct class of property and impose upon them a tax not extended to quarries, forests, etc., without depriving their owners of the equal protection of the laws guaranteed by the Fourteenth Amendment. And this question must be answered in the affirmative, under the principles announced in *Heisler* v. *Thomas Colliery Co.*, 260 U. S. 245, where we sustained a tax confined to anthracite coal against the objection of arbitrary classification in that bituminous coal was not included. The State Legislature may exercise wide discretion in selecting the subjects of taxation (*Oliver Iron Mining Co.* v. *Lord*, 262 U. S. 172, 179) so long as it refrains from clear and hostile discrimination against particular persons or classes. *Bell's Gap Railroad Co.* v. *Pennsylvania*, 134 U. S. 232, 237. Certainly, ores differ as much from other products of the land as anthracite coal does from the bituminous variety, and ore gives character to appellants' holdings. Lands chiefly valuable for ore are depreciated by its extraction, and probably will yield less and less under an *ad valorem* tax as the mining continues. The situation is very different where the principal value depends on other uses which do not deplete. The selection of the business of mining only, for imposition of the occupation tax, was not arbitrary and, certainly, we cannot say that the classification by the legislation now assailed was without any reasonable basis.

There is nothing to show purpose by the State officers to insist upon a construction or application of the statute which will deprive appellants of their constitutional

rights; and, considering the true construction of the Act, no ground appears which would justify an injunction to prevent them from proceeding with its orderly enforcement.

*Affirmed.*