BIRNBACH *v.* WESSON.

Opinion delivered March 4, 1929.

*J. A. Tellier,* for appellant.

*Gaughan, Sifford, Godwin & Gaughan,* for appellee.

McHANEY, J. On February 25, 1927, appellant, who held an oil and gas lease on 4 acres of land in Ouachita County, known as the "Culp tract," subleased said tract to appellee, by the terms of which appellee agreed to pay appellant $50 in cash, and to begin the drilling of a well thereon within 20 days, the lease to run for six months and as long thereafter as production is obtained by the appellee. In addition to the cash payment, appellee agreed to pay appellant a "sum of money equal to one-sixteenth of the highest market value, f.o.b. nearest railroad tank cars, of all oil produced from said lands," and one-sixteenth of the value of gas and other substances or by-products. This one-sixteenth was to be paid monthly or semi-monthly in accordance with local custom, or as payments were made to appellee by the purchasers of the oil. Appellee agreed to pay all royalties accruing to B. Culp, lessor in the lease, to appellant. It

was further provided that ''any unpaid sum or sums due the lessor (appellant) under this lease contract shall become a prior lien upon all production from the leased premises, to secure the payment of such sum or sums due lessor hereunder.'' In other words, appellant retained a 1/16 overriding royalty on all oil produced from the lease. A further clause in the lease provided that ''failure or default in the performance of or compliance with any of the covenants, conditions * * * shall automatically terminate all rights and interest of the lessee thereunder,'' and that appellee should make ''sworn written reports'' monthly concerning the operation of the lease.

Appellee drilled a small producing well on this lease, about 12½ barrels daily, production beginning on May 1, 1927. All the oil therefrom was sold and delivered to the Atlantic Oil Refining Company, the only company having a pipe line in that territory. On June 23 appellant wrote appellee, demanding the monthly statements and settlement. Appellee promptly replied on June 27, advising that he had sold said company 4 tanks of oil, or about 500 barrels, and that he had not been able to collect therefor on account of a defect in the title. The Atlantic Oil Refining Company, as is the custom and universal practice of all oil purchasers, required of all the parties interested in the lease what is known as a ''division order'' before it would pay for oil. All parties interested in this lease, except appellant, signed such an order, and all parties, except appellant, were paid their respective share of the proceeds, until this action was instituted. Appellant again wrote appellee on July 18, demanding a detailed written, sworn report, regarding the manner of treating the oil employed, a full account of the gas production, etc., also ''itemized statement of all fixtures, plants, tanks, structures, machinery and improvements on the premises, and their condition and value.'' He also demanded settlement regularly, ''settlement to be made directly from you to me as per contract.'' To this letter appellee replied that the well

was making 12½ barrels every 24 hours, which was sold at $1.08 per barrel, and that he supposed that the Atlantic Company was paying him his royalty. Also that there was no gas in the well, and if he was not satisfied, to come down and look it over for himself. A number of other letters along the same lines were written by the parties to each other, appellee advising appellant that the well was producing pipe-line oil that did not require treatment and was being sold for $1.08 per barrel, and that "there is nothing but a little oil to sell. No gas, gold, diamonds or silver." Finally appellant served notice on appellee demanding that he execute and place of record a release removing cloud on his title to the lease in controversy because of the alleged breach in failing to settle and in making reports. This suit to cancel the lease followed. Appellee filed an answer, denying that the lease in question was the one agreed upon, that he signed it in blank, and that appellant filled out the blanks contrary to their oral agreement. He also filed a cross-complaint seeking a reformation of the instrument. The court dismissed both the complaint and cross-complaint for want of equity, and both parties have appealed.

Appellant urges that the court erred in refusing to decree a cancellation of the lease on the ground that appellee breached the contract between them by failing to comply with three covenants in the lease, and that, under the clause therein providing that "failure or default in the performance of, or compliance with, any of the covenants, conditions, provisions or terms contained in this lease shall automatically terminate the rights and interest of the lessee thereunder." It is said that the appellee breached the lease in the following particulars:

(1) That he did not comply with the agreement or covenant contained in the lease to pay appellant a one-sixteenth overriding royalty on the oil and gas produced; (2) that he failed to comply with that part of the agreement to make written monthly verified reports to the appellant; (3) that he did not comply with that part

of the agreement requiring him to pay the one-eighth royalty to Culp, the original lessor.

With reference to the first proposition, it may be said that, while the lease provides that appellee shall pay appellant a one-sixteenth overriding royalty, the fact remains that there has been no breach, because the amount due appellant has been available to him from the oil purchaser every month since the well began to produce oil. Appellant had a one-sixteenth overriding royalty interest, and it was quite proper for the Atlantic Oil Refining Company to pay the amount due the respective owners or persons interested in the lease the amounts due them. If appellant had signed the division order, he would have received his payments regularly. This being a royalty interest, and a lien being retained on all production in the lease to secure the payment thereof, the oil purchaser would have paid the appellee at his peril the interest due appellant, under the authority of *Shreveport-El Dorado Pipe Line Co.* v. *Bennett*, 172 Ark. 804, 290 S. W. 929. We therefore hold that there has been no breach of the contract in this regard.

With reference to the second alleged breach of the contract, that he did not make the sworn monthly written reports in the manner called for in the lease, we think there is no merit in this contention. As heretofore set out, appellee, at appellant's request, wrote him frequent letters giving him the absolute status of the well, in substantial compliance with the provisions of the contract. He told him what amount of oil the well was making, to whom he was selling the oil, and the price he was getting therefor. He told him that the overriding royalty interest due him was held by the oil purchaser, and that he would get it immediately on signing the division order, and that the well was making no gas, and no treatment of the oil was required. This was a substantial compliance with the provision of the lease requiring reports.

With reference to the third proposition, that appellant breached the contract by failure to pay Culp the one-eighth royalty due him, we are of the opinion that

no breach has occurred in this regard, as the undisputed proof shows that Culp was paid his one-eighth royalty interest by the oil purchaser until the date of the bringing of this suit, and that the fund is now held by the Atlantic Oil Refining Company, to be paid to him on the settlement of this litigation.

Having found that there has been no breach of the contract, it necessarily follows that appellant was not entitled to a cancellation, and the decree of the court was correct in dismissing his complaint for want of equity.

What we have said with reference to appellant's contentions in effect disposes of appellee's cross-appeal. In this view of the matter, appellee was not entitled to a reformation of the instrument. We do not review the evidence touching on this question, as it would serve no useful purpose. The chancellor correctly dismissed the cross-complaint for want of equity. We find no error, and the decree is affirmed.

KIRBY, J., dissents on the direct appeal.