## FORBES, Respondent, v. MID–NORTHERN OIL CO., Appellant.

(No. 7,356.)
(Submitted April 29, 1935.   Decided May 16, 1935.)
[45 Pac. (2d) 673.]

*Mr. Clay Tallman* and *Mr. Donald Campbell,* both of the Bar of Tulsa, Oklahoma, for Appellant, submitted a brief; *Mr. Campbell* argued the cause orally.

*Messrs. Belden & De Kalb,* for Respondent, submitted a brief; *Mr. H. Leonard De Kalb* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from a judgment of the district court of Fergus county. G. T. Forbes, plaintiff and respondent, instituted the action against Mid-Northern Oil Company, a corporation, defendant and appellant. The action was for the recovery of certain sums of money paid as taxes upon an alleged royalty interest owned by plaintiff in oil produced from land in Petroleum county. The taxes were for the years 1928, 1929 and 1930.

One Harrison Green was the homestead entryman of the lands in the Cat Creek district from which the oil was produced. The government of the United States retained title to the oil and gas, but allowed Green a statutory lease. In 1920, Green made a contract with one J. F. Forbes and others, whereby Forbes and his associates, B. N. Forbes, W. H. Forbes, Harry H. Schwartz, Jr., and Herbert A. Hover, acquired working or operating rights in the lands. Later in the same year, Forbes and his associates entered into an agreement with the Midwest Refining Company and others, whereby the lands were to be developed and drilling for oil and gas was to be done. In this contract the Midwest Company and Frank Frantz were designated "operators." They agreed to pay Forbes and his associates, as owners, $33\frac{1}{3}$ per cent. of the net proceeds derived from the sale of oil or gas produced and marketed from the lands. The rights of the owners were fixed and defined, but later there was some adjustment of interests. The rights of the operators, the Midwest Company and its associate, were later assigned to the Mid-Northern Oil Company, defendant here.

On August 1, 1933, plaintiff Forbes and his associates assigned and transferred to defendant all of their right, title and interest under the agreement. As a consideration for the assignment defendant executed to plaintiff and his associates what was designated an "assignment of royalty." By the terms of this assignment of royalty it was provided that defendant "does by these presents sell, assign, transfer, convey and set over unto the said parties of the second part, as royalty payable in cash, 20 per cent. of the value of all oil or gas that may be produced, saved and marketed from the hereinafter described lands and premises so long as the same are held and operated by the party of the first part, its successors and assigns, and any person, firm or corporation in contractual relation with it, and by virtue of those certain oil and gas leases issued upon the twenty-eighth day of January, 1921, by the United States of America to one Harrison Green, or any extension or extensions of said leases. The value of such oil to be the posted field price of similar crude oil at the wells within the same field, at the time and day of de-

livery,'' etc.. This instrument provided that such royalty should be divided evenly among the Forbes brothers, one of whom is the plaintiff here, and that the royalty should be by them held in severalty and not in common. The other provisions of the instrument are unimportant here.

Oil in paying quantities was developed and produced from the lands. From the beginning of the operations, controversy existed as to the taxes on the net proceeds. The matter remained more or less uncertain until the enactment of Chapters 139 and 140 of the Laws of 1927. It is important to understand the provisions of these chapters. The two Acts, bearing successive numbers, were approved on March 9, 1927. Chapter 139 relates to the statement of gross yield of mines and net proceeds, and as to how they are computed. This Act requires the operator of a mine (or oil-well) to make out and deliver to the State Board of Equalization a statement of the gross yield of the minerals from such mine, upon a form furnished by the board. The report is required to show the name and address of the owner or lessee of the mine, together with the names and addresses of any and all persons, corporations or associations claiming or holding any royalty interest in the product. Subdivision 4 of section 1 of the Act provides for a statement of the value of the product yielded to each person, including royalty holders, the same to be ascertained after certain deductions therein enumerated. Section 2 provides a means of computing net proceeds. This section authorizes deductions from the gross for certain purposes enumerated therein. The first deduction is of ''royalty paid or apportioned in cash or in kind by the person, corporation or association so engaged in mining.'' It will thus be observed that Chapter 139 was designed to form a basis for the ascertainment of amounts of net proceeds due, and for the division thereof among those responsible for the payment of taxes thereon.

Chapter 140 requires every operator engaged in mining to make and deliver to the State Board of Equalization a full, true and complete verified statement, setting forth the name and address of the owner or lessee of a mine, together with the names

and addresses of any and all persons, corporations, or associations owning or claiming any royalty interest in the mineral product of such mine, or the proceeds derived from the sale thereof, together with the amount of such interest so owned or claimed. This chapter further provides that the State Board of Equalization shall proceed to the assessment of all such royalty interests at their full cash value, which shall be the full cash value of the money or product yielded as royalty during the preceding calendar year, and which royalty interests shall be taxed on the same basis as net proceeds of mines are taxed as provided by section 1999 of the Revised Codes of 1921; that the State Board of Equalization shall certify such list or schedule, together with the assessment thereof, to the county clerk of the county in which the mining claim is located; that the county clerk shall thereupon for convenience enter such assessment on the personal property list under the name of the operator of such mine; that in the assessment list, however, he must set forth the names of the owners of such royalty, and that such assessments, when entered, shall have all the force and effect as if made in the names of the owners of such royalty individually.

The Act provides that the operator and the royalty holder shall be jointly and severally liable for the payment of the taxes assessed against the royalty; that such taxes shall be payable by and may be collected from the operator; that they shall be and constitute a lien upon the royalty and royalty interest; and that the operator may recover or withhold from any proceeds of such royalty or royalty interest, either in kind or money, coming into his hands, the amount of any tax paid by him upon any such royalty or royalty interest.

Two previous controversies growing out of the collection of taxes on mine proceeds or royalty derived from the operation of the lands here involved have heretofore reached this court. One was the case of *J. F. Forbes* v. *Mid-Northern Oil Co.,* 74 Mont. 368, 240 Pac. 818. That case involved amounts withheld by the Mid-Northern Oil Company for the payment of taxes accrued prior to August 1, 1923; that is, prior to the date of the instrument designated "assignment of royalty." The J. F.

Forbes, plaintiff there, was a brother and associate of the present plaintiff. He brought suit for the payment of the amount withheld and obtained judgment in the district court. That judgment was affirmed in this court.

The other action was by G. T. Forbes, the present plaintiff, and appears under the title of *Forbes* v. *Mid-Northern Oil Co.,* in 90 Mont. 297, 2 Pac. (2d) 1018. That case involved amounts withheld by the defendant company from amounts accrued during the year 1926, and for the payment of royalty taxes under the provisions of Chapters 139 and 140, supra. Judgment of the district court was against Forbes. On appeal to this court the judgment was reversed and set aside on the ground that the provisions of the two chapters were not retroactive. There it was held that the company did not have a right to make deductions and withhold the amounts for the payment of the 1926 taxes.

The amounts involved here constitute the deductions made by the defendant for the years 1928, 1929 and 1930, and the suit is for the recovery thereof. Plaintiff's complaint in this action alleges the provisions of all of the contracts entered into between the parties, and has attached to it as exhibits the three agreements, viz., the original agreement of August 23, 1920, between Forbes et al. and Midwest Refining Company et al., and the two agreements of August 1, 1923, whereby the former agreement was abrogated and a new contract entered into. The agreement of August 1, 1923, the one designated ''Assignment of royalty,'' is the one concerning which this controversy has arisen.

In addition to the allegations as to the contracts and the claim of indebtedness, the complaint contains averments detailing the essential facts of the former case of *J. F. Forbes* v. *Mid-Northern Oil Co.,* 74 Mont. 368, 240 Pac. 818, particularly the fact that a judgment was entered in that action in favor of Forbes and against the Mid-Northern Company, holding that the amounts deducted by that company had been wrongfully withheld. The effect of the allegations as to the previous suit was that the matter of liability for the proceeds taxes had been settled and ad-

judicated in the previous action; it really amounted to a plea of *res adjudicata.* Defendant moved to strike the allegations from the complaint; the motion was overruled. The defendant answered. In due time a reply was filed. The. matter came to trial before the court without a jury. Before the trial the parties entered into a stipulation whereby it was agreed that the cause should be submitted to the court for disposition and judgment upon the pleadings, and upon further agreed facts in lieu of oral evidence. The facts agreed upon and the pleadings, taken together, made and constituted the case as it was submitted to the district court.

The court found the issues in favor of the plaintiff. Judgment was entered accordingly for the amount prayed for in the complaint.

One of the assignments of error made by defendant and relied upon and argued on this appeal has to do with the ruling of the court on the motion to strike the above-referred to part of the complaint. In view of the submission of the matter upon stipulation and the agreed statement of facts, it is really not necessary to discuss the matter in the light of error in the settlement of the pleadings. It is important, however, to consider the effect of the previous judgment, and the asserted claim that the rights of the parties, so far as the matter of the payment of taxes is concerned, have been settled and determined. Defendant contends that by the terms and declarations of the opinion rendered by this court in the case of *J. F. Forbes* v. *Mid-Northern Oil Co.,* 74 Mont. 368, 240 Pac. 818, 819, the issues in this case were in effect adjudicated. In order to determine the matter we must discuss some of the particulars of the issues and opinion in that case.

Both the previous action and the one here under consideration are against the Mid-Northern Oil Company; but in the previous case J. F. Forbes, brother of the present plaintiff, was a party. The fact that the issues in both cases grew out of the same contract and really are of the same nature is responsible for the claim that this court settled and determined those issues in the previous case. Such a claim might and undoubtedly would be

tenable, but for the fact that the issues in the original case had to do with net proceeds taxes paid and accrued prior to August 1, 1923, that is, prior to the time of the execution and delivery of the final instrument between the parties, and the one under which they are working at this time. Plaintiff in his brief says that all of the questions were settled by that opinion, and he quotes and relies upon the following language used by the court: "The defendant [Mid-Northern Oil Company] became the absolute owner of the interest of the plaintiff and his brothers [including this respondent] in the original agreement, with all of its burdens, obligations, and benefits. The defendant took over the first contract completely." If the foregoing statement stood alone and was of general application to the net proceeds taxes, it might have the effect given it by plaintiff. But the statement in the opinion is preceded by language which of necessity must limit its application to the facts then before the court. In the paragraph just preceding the quoted statement, the court explained what was at issue before it, and said: "Thus it appears that the amount sought to be recovered in this action is the proportion of the net proceeds taxes paid and accrued prior to August 1, 1923, with which it is alleged the plaintiff is chargeable under the original contract, which sum was withheld by the defendant, in making settlement with the plaintiff and his brothers under the new contract, from the amount of royalties due them on December 31, 1923. The question is whether the plaintiff is properly chargeable therewith." Thus it will be observed that the language employed by the court and relied upon by plaintiff must be considered as having application only to the issues of the cause before the court. The court was not attempting to construe the contract generally or to decide the question of the final liability for net proceeds or royalty taxes upon the interests covered by the new contract. It merely declared that Forbes and his associates could not be held under the new contract for taxes accrued during the life of the old contract. The statement that the Mid-Northern Company took the interests of the plaintiff and his brothers in the original agreement with all of its burdens, obligations and benefits, did not assume to define

18

what the burdens and obligations were, except the one then under consideration in that action.

It is a well-known rule that "in considering the meaning and ▮ intent of the language of an opinion one must have constantly in mind the facts of the case in which the opinion is written. For, as Chief Justice Marshall observed, it is impossible so to use language as that general expressions apply in every instance with the same meaning to every condition of facts." (*Sun River Stock & Land Co.* v. *Montana Trust & Savings Bank,* 81 Mont. 222, 262 Pac. 1039, 1047; *Farbo* v. *School District,* 95 Mont. 531, 28 Pac. (2d) 455.)

We therefore hold that the issues in this case were not settled and did not become *res adjudicata* by virtue of the judgment in the previous case of *J. F. Forbes* v. *Mid-Northern Oil Co.,* 74 Mont. 368, 240 Pac. 818.

Three questions must be decided here in order to reach a solution of the main issue in the case. The ultimate issue really resolves itself into the simple question, Who shall finally pay the taxes on the part of the proceeds of the oil operations that were given to Forbes and associates under the last contract with the Mid-Northern Oil Company? Is the obligation that of Forbes, or does it rest upon defendant, the operator? The answer to this question depends upon the answers to the other questions.

Before we proceed to propound and answer these questions, it is important to observe that the scheme outlined and promulgated for the collection of taxes upon royalties under the terms of Chapters 139 and 140, supra, has already received the approval of this court. In the case of *Byrne* v. *Fulton Oil Co.,* 85 Mont. 329, 278 Pac. 514, 518, this court approved the plan in the following language: "The method of making the operator and the royalty holder jointly liable for the tax and authorizing the operator to withhold from the proceeds of the royalty interest the amount of any tax paid by him, was intended as a certain and expeditious method of collecting taxes on such property, and preventing the possibility of any of it escaping taxation. It was designed to authorize the collection of the tax at the source of the product, in order to avoid the necessity of

seeking out each royalty holder for the purpose of effecting collection. The scheme is analogous to that of collecting taxes on shares of stock in a national bank, by collecting the tax from the bank as the agent of the stockholders. This has been held legitimate by the Supreme Court of the United States in the case of *Home Savings Bank* v. *Des Moines*, 205 U. S. 503, 27 Sup. Ct. 571, 51 L. Ed. 901, where it is said: 'It, however, is not an uncommon and is an entirely legitimate method of collecting taxes to require a corporation, as the agent of its shareholders, to pay in the first instance the taxes upon shares, as the property of their owners, and look to the shareholders for reimbursement.' The statute is not in conflict with section 5, Article XVI of our Constitution.'' Thus we have the approval of the law by this court.

The first of the three questions to be answered has to do with the character of the amounts to be paid by the defendant operator to the plaintiff. Plaintiff contends that the provisions of Chapters 139 and 140 have no application to him, because the amounts to be paid him under the contract were not in fact royalties, but were recurrent indebtedness; that the word ''royalty'' was used in the contract merely as a ''term of convenience''; that in reality the amounts represented by the percentages constitute ''compensation'' to be paid to him; and that such payments are not a part of the net proceeds of the mining operations; in other words, that the payments are something other than royalty, and something quite without the purview of the chapters to which we have alluded. Defendant asserts that such amounts are indeed royalties, and that the instrument designated ''assignment of royalty'' is shown by its provisions to be just what it was denominated.

Chapters containing long dissertations have been written upon the subject of royalty and royalty interests. The works on mining and oil legislation and the decisions on the subject are replete with definitions and illustrations of royalty, overriding royalty, and the distinction between amounts payable for royalty and amounts due and payable as rentals for leases and under lease contracts. Indeed, volumes have been written on

20

that subject. It is therefore not surprising that the parties to this contract may have had only a vague and imperfect understanding of what really constituted a "royalty," but that makes no particular difference. The provisions of the instrument under consideration must be construed for what they really are, regardless of the designation given by the parties. (*In re Wells*, (D. C.) 140 Fed. 752; *Quertermous* v. *Hatfield*, 54 Ark. 16, 14 S. W. 1096.)

The first contract, the one made with the Midwest Refining Company and its associate, was clearly an operating agreement. That contract was abrogated by the assignment of all the interests of the parties to the successor of the Midwest, the Mid-Northern Company, defendant here. As we have indicated, that instrument was designated "assignment of royalty"; and in every part of the instrument wherein the subject matter is mentioned, it is so denominated.

This court has had for consideration different forms of contract, and has had occasion to construe the same with relation to the payments of royalty and net proceeds taxes. In the case of *Homestake Exploration Corp.* v. *Schoregge*, 81 Mont. 604, 264 Pac. 388, three contracts were under consideration. The court classified the contracts and placed them into different classes because of the then existing law having to do with net proceeds. In the later case of *Byrne* v. *Fulton Oil Co.*, supra, the court discussed different forms of contract as applicable to the subject, and in the course of that opinion said: "The effect of Chapter 140 is to place all royalty interests on the same footing regardless of the particular form of lease." This statement was made by the court in the consideration of the very provisions now under consideration. It would seem that in the light of this declaration of the court the matter of the form or designation of the instrument here under consideration becomes of little importance. It all gets back to the question of what the instrument really accomplished. If the interests preserved to the plaintiff by the two contracts of August 1, 1923, partake more largely of the elements of royalty than of any other elements, we do not hesitate to say that the designation given by the

parties at the time was appropriate and correct. A careful study of the subject of royalties and of contracts generally having to do with such matters leads us to the conclusion that the parties knew what they were talking about and had an appreciation of what they were doing when they treated the subject as royalty. In *Northern Pacific Ry. Co.* v. *Musselshell County,* 74 Mont. 81, 238 Pac. 872, 874, this court used the following language: "Some contention is made by the parties as to whether the sum paid by the lessees to plaintiff should be considered as rent or royalty, but it is immaterial which it may be, if a part of the 'net proceeds.'" We therefore hold that for the purposes here under consideration, that is, for the purposes contemplated in Chapters 139 and 140, supra, the amounts to be paid by defendant to plaintiff under the terms of the last contract of August 1, 1923, were and are royalty. (See *United States* v. *Noble,* 237 U. S. 74, 35 Sup. Ct. 532, 59 L. Ed. 844; *Hinerman* v. *Baldwin,* 67 Mont. 417, 215 Pac. 1103; *Homestake Exploration Corp.* v. *Schoregge,* supra; *Birnbach* v. *Wesson,* 179 Ark. 128, 14 S. W. (2d) 243; *Indiana Natural Gas & Oil Co.* v. *Stewart,* 45 Ind. App. 554, 90 N. E. 384; *Hill* v. *Roberts,* (Tex. Civ. App.) 284 S. W. 246; *Ferguson* v. *Steen,* (Tex. Civ. App.) 293 S. W. 318.)

It is next urged that the imposition of the tax upon plaintiff's royalties in accordance with the provisions of Chapter 140 impaired his rights under the royalty assignment. Plaintiff asserts that if his interest is held to be a "royalty" within the meaning of Chapter 140, then, as applied to him, the chapter is unconstitutional in that it violates section 11, Article III of our Constitution, which forbids the impairment of the obligation of a contract. The same contention was advanced in the case of *Byrne* v. *Fulton Oil Co.,* supra, upon practically identical facts. With respect to this question the *Byrne Case* is applicable and controlling here. The language used by this court in that case is so peculiarly pertinent and applicable here that we feel justified in quoting therefrom at some length. The court said: "It is also contended that Chapter 140 is repugnant to the provision of section 11, Article III, of our Constitution,

as impairing the obligation of a contract. It is contended that, when the contract or lease in question was made, the law authorized but one assessment, and that to the operator, and that the effect of this Act is to impair the obligation of that contract.

" 'A contract between individuals cannot have the effect of depriving the state or any municipal subdivision of any power of taxation otherwise belonging to it.' (12 C. J. 993; *State* v. *Clement Nat. Bank,* 84 Vt. 167, 78 Atl. 944, Ann. Cas. 1912D, 22.) And so it has been held that a law requiring the lessee of a railroad to deduct the taxes levied on the road from the rent agreed to be paid under the lease and to pay it to the state does not impair the obligation of prior leases. (*Vermont & Canada R. Co.* v. *Vermont Central R. Co.,* 63 Vt. 1, 21 Atl. 262 [731], 10 L. R. A. 562.)

"A complete answer to this contention is found in the case of *Lake Superior Consol. Iron Mines* v. *Lord,* 271 U. S. 577, 46 Sup. Ct. 627, 70 L. Ed. 1093, where the court, speaking through Mr. Justice McReynolds, said: 'Titles to all the lands and leases were obtained subject to the state's power to tax. If the statute now in controversy is within that power, it cannot impair the obligation of appellants' contracts; if beyond, it is, of course, invalid.'

"The supreme court of Washington, in the case of *Newman* v. *Commercial Waterway District,* 125 Wash. 577, 217 Pac. 9, stated the applicable rule as follows: 'The taxpayer has no vested right in the existing mode of collecting taxes. There is no contract between him and the state that the latter will not vary such mode, and so long as no fundamental right of the taxpayer is invaded he cannot complain of a variation in the mode.' "

We are of the opinion that the above language used by this court in the *Byrne Case* conclusively determines the question here under consideration. Regardless of what the law may be in other jurisdictions, the matter has been put at rest in this state. However, the authorities quite generally sustain the doctrine laid down in the *Byrne Case.* (See *Marble* v. *Oliver Iron Min. Co.,* 172 Minn. 263, 215 N. W. 71; *North Missouri Ry. Co.*

v. *Maguire,* 20 Wall. 46, 22 L. Ed. 287; *Henderson Bridge Co.* v. *City of Henderson,* 173 U. S. 592, 19 Sup. Ct. 553, 43 L. Ed. 823; *Clement National Bank* v. *Vermont,* 231 U. S. 120, 34 Sup. Ct. 31, 58 L. Ed. 147; *Ammidown* v. *Freeland,* 101 Mass. 303, 3 Am. Rep. 359; *Mumford* v. *Sewall,* 11 Or. 67, 4 Pac. 585, 50 Am. Rep. 462; *Common Council* v. *Board of Assessors,* 91 Mich. 78, 51 N. W. 787, 16 L. R. A. 59; 12 C. J. 993 et seq.)

Accordingly we hold that Chapter 140 did not impair the obligation of the contract within the contemplation of the constitutional inhibition.

The only remaining question necessary to discuss here has to do with the fact of plaintiff's residence without the state of Montana. He claims that because of this fact the tax could not properly be laid against him. His argument on this point is very largely predicated upon his contention that he has no property interest in the oil lands or their proceeds, but that the contract of August 1, 1923, created the relation of debtor and creditor between the parties, and, therefore, the situs of the property is at his place of residence in California. In this connection it must be observed that our conclusion that the interest covered by the contract or ''assignment of royalty'' as it is called, is in fact royalty, destroys the force of the argument. The fact that the interest to be taxed as royalty is a part of the net proceeds of a mine brings the subject squarely within the contemplation of our Constitution (sec. 3, Art. XII). Such fact makes it unnecessary for us to classify the tax in a strict sense. This court has recognized this fact in the case of *Byrne* v. *Fulton Oil Co.,* supra, where it was said: ''The framers of the Constitution, on account of the difficulty in arriving at a fair value of mining property, adopted as a substitute the method provided for by section 3, Article XII, supra, for taxing the 'annual net proceeds.' The net proceeds tax is simply a tax in lieu of, or as a substitute for, the *ad valorem* tax on the value of mines or mining interests. (*Northern Pac. Ry. Co.* v. *Musselshell County,* 54 Mont. 96, 169 Pac. 53; *Salt Lake County* v. *Utah Copper Co.,* (C. C. A.) 294 Fed. 199; *Beaver County* v. *South Utah Mines & Smelters,* (C. C. A.) 17 Fed. (2d) 577; *South Utah Mines*

*& Smelters* v. *Beaver County,* 262 U. S. 325, 43 Sup. Ct. 577, 67 L. Ed. 1004.) It is well settled in this state that the mineral contents of a mine may not be taxed *in situ,* but taxation must be on the annual net proceeds. (*Hinz* v. *Musselshell County,* 82 Mont. 502, 267 Pac. 1113.)

"If the statute is sufficiently broad, the royalty owner may be taxed on the net proceeds yielded to him. (*Tong* v. *Maher,* 45 Mont. 142, 122 Pac. 279.) And, as said by Mr. Justice Galen, speaking for the court in the case of *Homestake Exploration Corp.* v. *Schoregge,* 81 Mont. 604, 264 Pac. 388: 'The net proceeds to him (the royalty owner) is the market value of the oil without deduction,' and 'the separate interests which different persons may own in the same property is properly assessable and taxable to the true owner of the particular interest.'"

It follows that if the property was royalty, as we have decided, and was a part of the net proceeds, as we have indicated, then the tax laid against such net proceeds in lieu of an *ad valorem* tax on the oil in the ground, as a part of the realty, certainly was not a personal property tax the levy of which must depend upon the residence of the owner. Plaintiff cites and relies upon the case of *State ex rel. Rankin* v. *Harrington,* 68 Mont. 1, 217 Pac. 681. The opinion in that case contains a most able and comprehensive discussion of all of our tax laws, past and existing at the time, but it does not assume to treat specifically the question of *situs* as applied to net proceeds of mines, or royalties, and for the very good reason that the subject is a special matter, an exception to the general rule and theory of taxation, made so by direct constitutional mandate. This principle was recognized by this court in the case of *Byrne* v. *Fulton Oil Co.,* supra, wherein it was said: "The net proceeds tax is simply a tax in lieu of, or as a substitute for, the *ad valorem* tax on the value of mines or mining interests." It would be difficult to believe that the Constitution makers by the adoption of this substitute for what would otherwise have been a real property tax, with all of its incidents and liabilities, intended to limit and restrict the power and right of the state of Montana to impose and collect taxes. The adoption of the theory of plaintiff would

amount to just that. We do not believe that such was the intention, or that such a result was accomplished. We think that the statement of the United States Supreme Court in *Lake Superior etc.* v. *Lord*, 271 U. S. 577, 46 Sup. Ct. 627, 629, 70 L. Ed. 1093, is applicable here. There it was said: "As the tax is laid upon land, neither the owner's residence, nor the place fixed for payment of the royalty is important." (See, also, *Royal Mineral Assn.* v. *Lord*, (D. C.) 13 Fed. (2d) 227; *Mt. Sterling Oil & Gas Co.* v. *Ratliff*, 127 Ky. 1, 104 S. W. 993; *Shaffer* v. *Carter*, 252 U. S. 37, 40 Sup. Ct. 221, 64 L. Ed. 445; *United States* v. *Noble*, 237 U. S. 74, 35 Sup. Ct. 532, 59 L. Ed. 844; *State* v. *Widule*, 164 Wis. 56, 159 N. W. 630.)

The judgment is reversed, with direction to enter judgment for defendant.

ASSOCIATE JUSTICES MATTHEWS and MORRIS concur.

MR. CHIEF JUSTICE SANDS, absent on account of illness, takes no part in the foregoing decision.

MR. JUSTICE ANDERSON: I concur in the result and in what is said in the majority opinion, except as hereinafter recorded.

If we were for the first time considering the question as to whether the provisions of Chapter 140 of the Laws of 1927 impaired the obligation of the contract under consideration, I would without hesitation answer the question in the affirmative. The decision of this court in the case of *Byrne* v. *Fulton Oil Co.*, 85 Mont. 329, 278 Pac. 514, on the question of the impairment of the obligation of existing contracts, was in error. It was decided contrary to the views which I entertained at the time of the rendition of that decision from which I have at no time departed. It is desirable that our laws should be stable and the decisions of our court respected. I am now agreeing to the conclusion announced in the decision of Mr. Justice Stewart on this question for the sole and only reason, and for none other, namely, the rule of *stare decisis*.

Rehearing denied June 5, 1935.