No. 22,925.

RAY HOLLINGSWORTH, *Appellee*, V. GEORGE D. BERRY and HERMAN H. FISHER, *Appellants*.

### SYLLABUS BY THE COURT.

WORKMEN'S COMPENSATION ACT—*Defendant Engaged in Drilling Oil and Gas Well—Not Within Provisions of Compensation Act—Oil or Gas Well Not a Mine.* An employer of less than five workmen, who has not affirmatively elected to accept the provisions of the workmen's compensation act, is not brought within its operation by reason of the fact that he is engaged in drilling an oil or gas well. An oil or gas well is not a mine within the meaning of the provision extending the effect of the act to mines irrespective of the number of workmen employed.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed October 9, 1920. Affirmed.

*Thomas E. Wagstaff*, and *Donald W. Stewart*, both of Independence, for the appellant.

*Charles D. Welch*, of Coffeyville, for the appellee.

The opinion of the court was delivered by

MASON, J.: On October 25, 1919, George D. Berry and Herman H. Fisher were engaged in the business of drilling oil and gas wells and Ray Hollingsworth was in their employ as tool dresser. While they were drilling a well Hollingsworth received an injury arising out of and in the course of such employment. He brought an action against the firm upon their common-law liability, alleging that his injury was due to their negligence. The defendants demurred to the petition upon the ground that it showed that they were subject to the provisions of the workmen's compensation act and that therefore the plaintiff's remedy was confined thereto. This appeal is taken from an order overruling the demurrer.

The petition sets out that the defendants did not employ as many as five workmen, and it is not suggested that they had affirmatively elected to come within the terms of the compensation act. They consequently were subject to liability under the common law for any injury to the plaintiff resulting

from the negligence alleged, unless they were brought within the operation of the statute by virtue of its provision that it applies to mines irrespective of the number of employees. (Gen. Stat. 1915, § 5902.) In other words the ruling of the district court is correct unless an oil and gas well in the process of being drilled is to be regarded as a mine within the meaning of that provision.

Oil and gas and, for that matter, water are of course minerals in the broader sense of the word, but their extraction from the earth is not ordinarily spoken of as mining. In a number of cases it has been held that the word "mine" as used in a statute does not include an oil or gas well, there being no express provision to that effect—a matter, however, which obviously might be affected by the subject or context. (*J. M. Guffey Petroleum Co. v. Murrel*, 127 La. 466; *Kreps et al. v. Brady*, 37 Okla. 754; *Barton v. Wichita River Oil Co.*, 187 S. W. 1043 [Tex.].) If such a meaning is to be given to it here it must be by virtue of the following portion of the section of the act giving definitions of terms therein used which are to control "unless the context otherwise requires":

" 'Mine' means any opening in the earth for the purpose of extracting any minerals and all underground workings, slopes, shafts, galleries and tunnels, and other ways, cuts and openings connected therewith, including those in the course of being opened, sunk or driven; and includes all the appurtenant structures at or about the openings of the mine, and any adjoining adjacent work place where the material from a mine is prepared for use or shipment." (Gen. Stat. 1915, § 5903, subdiv. *c*; Laws 1917, ch. 226, § 2, subdiv. *c*.)

An oil or gas well, being an opening in the earth for the purpose of extracting minerals, is literally and technically within this definition. The language, however, does not suggest a purpose to depart from the ordinary meaning of the word except by making it include all connections and appurtenances. If it should be assumed that the sentence quoted standing alone would warrant regarding an oil and gas well as a mine for the purposes of this act we think that effect must be denied it by reason of further provisions, one of which reads as follows:

"This act shall apply only to employment in the course of the employer's trade or business on, in or about a railway, factory, mine or quarry, electric, building or engineering work, laundry, natural gas

plant, county and municipal work, and all employments where a process requiring the use of any dangerous explosive or inflammable materials is carried on, which is conducted for the purpose of business, trade or gain." (Gen. Stat. 1915, § 5900; Laws 1917, ch. 226, § 1.)

It will be noted that twelve classes of plants or occupations are enumerated, employment on, in or about which is necessary in order to render the statute applicable. The third of these is described by the word "mine" and it is only to this class that the statute is made applicable without an affirmative election by the employer, where less than five workmen are employed. The seventh class is designated by the phrase "engineering work," which is thus defined:

"'Engineering work' means any work in the construction, alteration, extension, repair or demolition of a railway (as hereinbefore defined), bridge, jetty, dyke, dam, reservoir, underground conduit, pole lines constructed or used for carrying conductors, sewer, oil or gas well, oil tank, gas tank, water tower, or waterworks (including standpipes or mains), any caisson work or work in artificially compressed air, any work in dredging, pile driving, moving buildings, moving safes, construction and repairing of streets, roads and highways, or in laying, repairing or removing underground pipes and connections; the erection, installing, repairing, or removing of boilers, furnaces, engines and power machinery (including belting and other connections), and any work in grading or excavating where shoring is necessary or power machinery or blasting powder, dynamite or other high explosives are in use (excluding mining and quarrying)." (Gen. Stat. 1915, § 5903, subdiv. g, as amended by Laws 1917, ch. 226, § 2, subdiv. g.)

From this it plainly appears that the effect the statute should have upon workmen employed in the construction of an oil or gas well engaged the attention of the legislature, and from the fact that they were placed under the classification designated as "engineering work" and not elsewhere mentioned we think the inference is clearly to be drawn that they were not intended to be covered by the provision in relation to mines, even if the language employed would otherwise be open to that construction. This interpretation seems to us to be in harmony with the letter of the statute and we think it also in accordance with its spirit. The mining industry was doubtless singled out from all others for special treatment for the reason that the workmen engaged therein are exposed to special and unusual dangers. Obviously the risks the legislature had in mind in this connection were those peculiar to working in or about the kind of a mine that is suggested by the use of that

word in common speech. One who is helping to drill an oil or gas well might be injured in substantially the same way as a miner, but the similarity would be incidental and not characteristic. The perils of well drilling would seem to resemble those of the other engineering work with which it is associated in the statutory enumeration more closely than those that readily suggest themselves in connection with what is ordinarily spoken of as mining.

An objection is made to the conclusion we have reached on the ground that "construction" is not an appropriate word to apply to the drilling of a well, and therefore that process is not included within the statutory definition of "engineering work." It is true that "construct" is not the term commonly used or that naturally suggests itself in that connection. And this is true of its synonyms "form" and "make." But any one of these words is sufficiently descriptive of the process to make its use in that sense entirely permissible and free from the least ambiguity. The word "construct" was obviously used as a convenient term to be applied to the various structures work upon which was included within the definition.

In subdivision *e* of the section already referred to, "electrical work" is defined as that connected with the "construction, installation, *operation,* alteration, removal or repair" of electric apparatus. The plaintiff, from the premise that the omission of the italicized word from the definition of engineering work implies its intentional exclusion, argues that the drilling of an oil or gas well is not included because it constitutes the operation of the well, rather than its construction. The drilling of such a well is of course an operation; it is an operation in the course of prospecting for oil or gas such as, for instance, meets a requirement to begin or prosecute operations of that character within a given time; but we think the drilling of an oil or gas well is more appropriately spoken of as its construction than as its operation. A distinction between drilling such a well and operating it is recognized in the statute which forbids doing either within one hundred feet of a railroad. (Gen. Stat. 1915, § 4978.)

The plaintiff also invokes the statute enacted in 1903 (eight years before the first Kansas workmen's compensation legislation) under the title "An act to define the term 'mining,'

and to further provide for the formation of mining companies and corporations," the first section of which reads as follows:

"The term 'mining,' as used in this and all other statutes, shall be held to mean the prospecting for and obtaining of all metallic and mineral substances, and in addition thereto, coal, clay, stone, petroleum, and natural gas, and any and all other valuable products formed or existing beneath the earth's surface." (Gen. Stat. 1915, § 2326.)

The specific purpose of this act was obviously to extend the provisions of the law authorizing the creation of corporations for the transaction of mining business so that it would unquestionably cover companies formed to prospect for and produce oil and gas. It does not expressly undertake to lay down a rule for the interpretation of statutes to be enacted in the future, but if such construction were to be given it, and its validity as so construed were conceded, we think the considerations already stated should still control.

The judgment is affirmed.