RICE OIL CO., RESPONDENT, v. TOOLE COUNTY, APPELLANT.

(No. 6,512.)

(Submitted November 14, 1929. Decided January 22, 1930.)

[284 Pac. 145.]

428

*Mr. R. L. Clinton* and *Mr. W. R. Knaak,* for Appellant, submitted an original and a reply brief; *Mr. Clinton* argued the cause orally.

*Mr. Louis P. Donovan,* for Respondent, submitted a brief and argued the cause orally.

430

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This action was instituted by the plaintiff to recover from Toole county a portion of the net proceeds tax assessed to plaintiff in the year 1926 on account of oil produced from the tracts of land hereinafter mentioned during the year 1925. The cause was tried upon an agreed statement of facts and comes here upon defendant's appeal. Specifications of error are assigned by defendant and cross-assignments by plaintiff.

All the questions presented have been settled by the decisions in *Fulton Oil Co.* v. *Toole County*, ante, p. 367, 283 Pac. 769, and *Queen City Oil Co.* v. *Toole County*, ante, p. 401, 283 Pac. 771, except that which we shall now discuss.

In 1925 plaintiff was drilling upon, and extracting oil from, two eighty-acre tracts in virtue of two operating agreements. One tract was included in the Byrne lease, the other in the Stannard lease, both of which will be referred to later.

Of the oil produced from each tract the plaintiff was entitled to seventy-five per cent, the remaining twenty-five per cent going to the land owners and royalty holders.

It was agreed that the two eighty-acre tracts "at all times during the year 1925 were operated by the plaintiff with one camp, one set of employees and officers of the plaintiff corporation, and that said tracts adjoin each other, and are situated on the same geological structure, and were most profitably and advantageously operated as one unit."

It appears that plaintiff operated the Byrne tract at a loss of approximately $45,000, while the net proceeds from the operation of the Stannard tract were large. Upon the theory that the two tracts of land were operated as a "mine," plaintiff in making its return to the state board of equalization claimed the right to deduct the losses sustained on the Byrne tract from the profits realized from the Stannard tract. This

claim was denied by the state board of equalization, which found the net proceeds from oil obtained from the Stannard tract to be $247,127.46, certifying the fact to the board of county commissioners of Toole county, which fixed the tax rate at 49.33 mills on each dollar of valuation. The total tax assessed against plaintiff was $12,191.76. On May 31, 1926, plaintiff paid to the county treasurer $6,095.88, the second installment of the tax, but paid $5,993.83 thereof under protest and within sixty days thereafter began this suit. The court entered judgment for plaintiff in the sum of $3,187.89, with costs of suit.

The trial court decided correctly that plaintiff was not liable for the taxes upon the twenty-five per cent of the oil belonging to the land and royalty owners (*Fulton Oil Co.* v. *Toole County,* supra; *Queen City Oil Co.* v. *Toole County,* supra), but evidently was of the opinion that the board of equalization erred in declining to allow plaintiff the losses mentioned above.

Oil is a mineral and the process of extracting it from the rocks is mining. (*Burke* v. *Southern Pac. R. R. Co.,* 234 U. S. 669, 58 L. Ed. 1527, 34 Sup. Ct. Rep. 907.) Consequently, this court has said an oil-well is a mine. (*Mid-Northern Oil Co.* v. *Walker,* 65 Mont. 414, 211 Pac. 353.)

Upon the postulate that an oil-well is a mine it is sought to apply to adjoining tracts of ground held under oil leases the rules governing the development and operation of mining claims held in group.

From the earliest period in which mining for gold and silver was pursued as a business, says Mr. Lindley in his standard work on Mines, section 630, miners were in the habit of consolidating adjoining claims, whether they consisted of one or more original locations, into one, for convenience and economy in working them (*St. Louis Smelting Co.* v. *Kemp,* 104 U. S. 636, 26 L. Ed. 875; 11 Morr. Min. Rep. 673; *Jackson* v. *Roby,* 109 U. S. 440, 27 L. Ed. 990, 3 Sup. Ct. Rep. 301), and that policy was made applicable to the performance of annual assessment work upon mining claims by

section 2324, United States Revised Statutes (U. S. C. A., Title 30, Chap. 2, sec. 28), which provides that, "where such claims are held in common, such expenditure may be made upon any one claim."

In applying the law it was held generally that claims must be contiguous (*Chambers* v. *Harrington*, 111 U. S. 350, 28 L. Ed. 452, 4 Sup. Ct. Rep. 428), that there must be a community of interest in each claim (*Eberle* v. *Carmichael*, 8 N. M. 169, 42 Pac. 95; Lindley on Mines, 2d ed., sec. 630), and that the work performed or improvements made must manifestly tend to the development of all the claims in the group (*Copper Mountain M. & S. Co.* v. *Butte & Corbin Con. Copper & Silver Min. Co.*, 39 Mont. 487, 133 Am. St. Rep. 595, 104 Pac. 540). The cardinal principle is that the work done upon one claim or more must inure to the benefit of all.

It is true that the term "mine," means mining property so ▆▆ developed as to yield, or to be capable of yielding, a profit, and this regardless of how the title to the land in which the mineral is found has been acquired (*Northern Pac. Ry. Co.* v. *Musselshell County*, 54 Mont. 96, 169 Pac. 53), but this does not trench upon the rules above announced. The principle that the work done upon the consolidated property shall be designed for the benefit of the property as a whole is still controlling. A familiar example is the exploitation of a lode upon which may be located several mining claims; the lode, for the benefit and development of all the claims, may best be exploited by a tunnel, from which cross-cuts may be run, upraises made, and winzes sunk. The entire development bears a correlation to the main object. To what extent sinking wells, generally far apart, over wide areas in developing, or attempting to develop, an oil-field is analogous to mining within the law as above outlined, need not be considered, and the question is one upon which we reserve an opinion.

In this case we have one tract of eighty acres patented to ▆▆ Byrne, the original lessor, who leased the land to Thompson, who assigned the lease to the Kalispell-Kevin Oil Company, which in turn entered into an operating agreement with

a predecessor of the plaintiff; there was reserved to Byrne and the Kalispell-Kevin Oil Company in the aggregate twenty-five per cent of the oil, or its equivalent. The other eighty-acre tract is owned by the state of Montana, having been leased by it to Stannard and assigned by him to the Kalispell-Kevin Oil Company, which entered into an operating agreement with a predecessor of the plaintiff, and here too twenty-five per cent of the oil, or its equivalent, is reserved.

The only community of interest which appears is in the operating company, the plaintiff, which desired to operate the leases economically and with advantage to itself. It was not contemplated by anyone that the oil from either tract should be extracted by a well driven upon the other tract. Far from it, for the owners of the land and their lessees are much interested in seeing that none of the oil underlying their respective tracts is extracted by means of a well or wells upon the other tract. Precautions are taken to avoid such a contingency. Instead of a common interest in the "mine," the interests of the land owners and their lessees in the respective tracts are antagonistic. Any encroachment by one upon the other's oil lessens the royalty income. The situation presented here is so radically at variance with the principles governing the working of metalliferous mines that nothing further need be added.

Taking the net proceeds as fixed by the state board of equalization as the sum of $247,127.46, plaintiff was liable to pay taxes upon seventy-five per cent thereof, or $163,345.68 only, upon which the tax was $8,057.85, the first half thereof being $4,028.93. Plaintiff paid $6,095.88, and therefore is entitled to judgment for $2,066.95, instead of $3,187.89.

The cause is remanded to the district court of Toole county, with direction to modify its judgment accordingly. The appellant shall receive its costs upon this appeal.

ASSOCIATE JUSTICES MATTHEWS, FORD and ANGSTMAN, and HONORABLE WILLIAM L. FORD, District Judge, sitting in place of MR. JUSTICE GALEN, absent on account of illness, concur.