[Civ. No. 11555.   Second Appellate District, Division One.—August 31, 1938.]

M. CORNWELL, Respondent, v. BUCK & STODDARD, INC. (a Corporation), Appellant.

Jennings & Belcher and Stevens Fargo for Appellant.

Raphael Dechter and B. L. Hoyt for Respondent.

DORAN, J.—This is an appeal from the judgment in an action for conversion. The facts briefly are as follows: On the 30th day of July, 1935, plaintiff's assignor rented to Anglo American Petroleum, Inc., on a month to month basis, certain oil well machinery to be used by such company in the drilling of an oil well. The rental agreement provided that the rental be the sum of $50 per day, payable thirty days in advance, and the sum of $37.50 per day payable out of oil produced from the proposed well. No time was specified during which the term was to continue. The agreement further provided that if any default occurred in the payment of the cash rental, plaintiff's assignor had the right to terminate the agreement and to enter the company's property and remove his equipment.

On November 25, 1935, Anglo American Petroleum, Inc., purchased from the defendant oil well tubing for use in the oil well, such purchase being made on a conditional sales contract under which title was reserved in the vendor. The conditional sales contract was not recorded.

On the 3d day of April, 1936, an action was commenced by the plaintiff, as assignee for collection, against the Anglo American Petroleum Corporation to recover the rental accrued after November 25, 1935, in the sum of $7,500, as well as for the sum of $82.50 for material furnished on an open book account. The sheriff levied a writ of attachment upon the tubing covered by the conditional sales contract of defendant herein. Defendant filed its third party claim under the provisions of section 689 of the Code of Civil Procedure with the levying officer, based upon the conditional sales contract, and in pursuance thereof such officer delivered possession of the tubing to the defendant. Thereafter judgment for a sum in excess of $8,000 was obtained in such action against the Anglo American Petroleum Corporation, which said judgment remains unsatisfied.

Plaintiff commenced the within action in conversion against the defendant and appellant herein, basing such action on the grounds that the third party claim was void for the reason that the same was based on the above-mentioned conditional sales contract which had not been recorded with the county recorder in accordance with the provisions of section 2980 of the Civil Code, in that the equipment described in the aforesaid conditional sales contract and in the aforesaid third party claim was "equipment and machinery used or to be used for mining purposes". The findings of fact and conclusions of law in substance support the allegations relied upon in that regard by plaintiff and respondent.

Section 2980 of the Civil Code in so far as it applies to the questions herein involved is as follows: "Every conditional sales contract, . . . of equipment and machinery used or to be used *for mining purposes,* must be . . . recorded within twenty (20) days after its execution in the office of the recorder of the county . . . '' (Italics added.)

The construction and interpretation of section 2980 of the Civil Code, and in particular the meaning of the phrase "for mining purposes", is determinative of the question involved in the within appeal.

With regard to the above-mentioned provision appellant contends that "Oil drilling is one of the principal industries in this state, and every member of the legislature was familiar with it. If it had been intended that this section applied to

equipment used in drilling for oil, a statement to this effect would have been included." Respondent, on the other hand, contends " . . . that had the legislature intended to exclude oil development from the operation of the enactment, that it would have used language appropriate to clearly accomplish such exclusion".

The question has not been decided by any appellate tribunal in California. *In re Great Western Petroleum Corp.*, 16 Fed. Supp. 147, supports respondent's contention, in which case, with regard to the term "mining purposes", the District Court of the Southern District of California held that "The discovery of petroleum has led to a change in terminology. Persons engaged in the industry, geologists and courts generally began to consider oil as a 'mineral' and the process of extracting oil from the ground as 'mining'. Such they are considered at the present time. See *Westmoreland & Cambria Natural Gas Co.* v. *De Witt*, (1889) 130 Pa. 235 [18 Atl. 724, 5 L. R. A. 731] ; *Isom* v. *Rex Crude Oil Co.*, (1905) 147 Cal. 659 [82 Pac. 317] ; *Callahan* v. *Martin*, (1935) 3 Cal. (2d) 110 [43 Pac. (2d) 788, 101 A. L. R. 871] ; *Burke* v. *Southern Pacific R. Co.*, (1913) 234 U. S. 669 [34 Sup. Ct. 907, 58 L. Ed. 1527] ; *Crain* v. *Pure Oil Co.*, 25 Fed. (2d) 824; *Rice Oil Co.* v. *Toole County*, (1930) 86 Mont. 427 [284 Pac. 145] ; *Shell Petroleum Corp.* v. *Caudle*, (1933) 63 Fed. (2d) 296. By common usage, the word 'mining' has thus ceased to be confined to the extraction by excavation from the earth of metals and solid minerals. It is now applied to the extraction from the earth of all substances which are classified geologically as 'minerals'. . . . But oil is *now* so generally considered a mineral and the extraction of oil is *now* so generally considered as mining, that we must assume that the California Legislature of 1933, in using the word 'mining' in the section (sec. 2980 of the Civil Code), used it in the sense in which that word had come to be used *at that time* and not in the sense in which a similar word might have been used by the California Legislature of 1872."

It may be conceded that oil extracted from the ground may be regarded as a mineral but, the conclusion reached in the above opinion, to the effect that the process of extracting oil from the ground is now generally considered as "mining", to say the least, is doubtful. That it has been con-

sidered as "mining" in certain instances and for certain purposes there can be no question. For example, referring to the authorities quoted in the above mentioned opinion, an oil well was held to be a mine within the meaning of certain tax assessment laws (*Rice Oil Co.* v. *Toole County, supra*) ; and again, in Texas, where "A mining partnership arises by operation of law where co-owners work a mine", the court held that a certain purported partnership agreement "contemplated a mining partnership" (*Shell Petroleum Corp.* v. *Caudle, supra*). In Oklahoma, where the question affected the character of a purported conveyance, the court held that "Whatever these instruments may technically be called, it seems clear, from all the terms thereof and the circumstances surrounding the transactions, that the intention of the parties thereto was merely to grant rights to go upon the lands, prospect for oil and gas and other minerals, . . . ; hence they were nothing more than mining leases" (*Crain* v. *Pure Oil Co., supra*). The United States Supreme Court has held that petroleum or mineral oil is a "mineral" within the meaning of the acts of Congress reserving mineral land from the railroad land grants. (*Burke* v. *Southern Pac. R. Co., supra.*) The Supreme Court of Pennsylvania has observed that "Gas, it is true, is a mineral, but it is a mineral with peculiar attributes which require the application of precedents arising out of ordinary mineral rights, with much more careful consideration of the principles involved than the mere decisions. Water also is a mineral, but the decisions in ordinary cases of mining . . . have never been held as unqualified precedents in regard to flowing, or even to percolating, waters. Water and oil, and still more strongly gas, may be classed by themselves, if the analogy be not too fanciful, as minerals *ferae naturae.*" (*Westmoreland & Cambria Natural Gas Co.* v. *De Witt, supra.*)

The California cases, *Callahan* v. *Martin, supra,* and *Isom* v. *Rex Crude Oil Co., supra,* also hold that oil is recognized as a mineral within the purview of certain laws therein under consideration.

On the other hand, although oil may be regarded as a mineral, its production is not always considered mining. In 40 Corpus Juris, 735, appears the following : "Ordinarily, however, the extraction of oil or gas from the earth is not spoken

of as mining, and an oil or gas well is not a 'mine' in its primary and restricted sense.'' To the same effect see *Hollingsworth* v. *Berry,* 107 Kan. 544 [192 Pac. 763, 11 A. L. R. 151]; *Carter* v. *Phillips,* 88 Okl. 202 [212 Pac. 747]; *Barton* v. *Wichita River Oil Co.,* (Tex. Civ. App.) 187 S. W. 1043; *Kreps* v. *Brady,* 37 Okl. 754 [133 Pac. 216]. In the case last cited, referring to the process of drilling ''a well for water which would be performed in the same manner as if drilling for oil or gas'', the court declared: ''By no stretch of the imagination could such an operation be held to be mining.'' The term ''mining operation'' was also held not to apply to oil production in *Guffey Petroleum Co.* v. *Murrel,* 127 La. 466 [53 So. 705]. It is significant to note, moreover, that in the definition of the word ''mineral'' in Webster's New International Dictionary, 2d edition, the word ''oil'' is not to be found. ''Mineral'' is defined therein as ''Any chemical element or compound occurring naturally as a product of inorganic processes. Minerals are usually solids, the only ones which are liquids at ordinary temperatures being water and mercury.'' Nor is the word ''mineral'' to be found in the definition of the word ''petroleum''. The definition of ''mine'' does not include the words ''oil'' or ''oil well'', nor any reference thereto either directly or indirectly, or even by implication or suggestion.

It should be noted, also, as a matter of common knowledge, that those who are engaged in the operation of drilling for oil are never referred to as ''miners''. For a comprehensive discussion of the question involved herein see *Barton* v. *Wichita River Oil Co., supra.*

Thus it will be seen that the attempt to characterize the process of drilling for oil as ''mining'' has been frequently challenged by reputable authority, and has not thus far been endorsed by that authority primarily and generally relied upon for the definition of words, namely, accredited dictionaries. The courts are disposed to follow rather than to lead in extending the meaning of words common to the English language. The reason therefore is plain, for to rely upon a common authority for such purposes manifestly results in a uniformity of decisions, whereas widespread, independent ideas and opinions only tend to confuse.

In an early opinion (1866) the Supreme Court of Pennsylvania used the expression "mining for oil", but in the light of the foregoing, manifestly it cannot be said that the expression has become general and common, or indeed even peculiar to the industry. It was to be expected that in the beginning when less was known as to its origin, oil produced from the ground was regarded as a mineral, for in the old general classification of things into three kingdoms, namely, the animal, the vegetable and the mineral kingdoms, it could fall into no other class. It does not follow, however, that because it has been classified as a mineral that the process of extracting oil from the ground is generally understood to mean "mining".

The courts are frequently called upon to settle disputes similar in character to the one herein involved, and in that connection are guided and limited by rules and doctrines of interpretation and construction that are sufficiently well known to require no citation of authority. It is the function of the court to determine what is intended by the statute, in which connection the legislature has declared that such "interpretation must be reasonable" (Civ. Code, sec. 3542) and that the intention of the legislature is to be pursued if possible (Code of Civ. Proc., sec. 1859); furthermore, in the construction of a statute the office of the judge is simply to ascertain and declare what is in terms or in substance contained in the statute and not to insert what has been omitted, or to omit what has been inserted. (Code of Civ. Proc., sec. 1858.)

That the word "mining" refers to and includes quartz and placer mining operations there can be no question, but by extending its evident meaning to include something doubtful would add to the statute that which may have been intentionally omitted. Such interpretation and construction would be mere speculation. The word "mining" occurs frequently in the codes, and to give the word the meaning contended for by respondent could lead to incalculable mischief. Any asserted doubt as to the meaning of the word "mining" as used in the statute under consideration would appear to be an artificial doubt rather than a warranted doubt resulting from that which is not clear. It must be held, therefore, that the word "mining" and the phrase "mining purposes", as

used in section 2980 of the Civil Code, do not include oil wells or drilling operations for the purpose of extracting oil from the ground.

For the foregoing reasons the judgment is reversed.

York, P. J., and White, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 27, 1938.